**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      25-29-SDD-SDJ

SHERMAN MYRON BROWN AND
MICHAEL JOHN LARTIGUE

**<u>RULING</u>**

Before the Court is a *Motion to Dismiss Indictment or to Seek Alternative Relief* by Defendant Sherman Myron Brown ("Defendant" or "Brown").[1] The Government filed an *Opposition*,[2] to which Defendant has filed a *Reply*.[3] The Court has considered the applicable law, arguments, and submissions of the parties, and is prepared to rule. For the following reasons, Defendant's *Motion to Dismiss*[4] is DENIED.

I.      **BACKGROUND**

On April 9, 2025, Defendant, along with co-defendant Michael John Lartigue ("Lartigue") (collectively "Defendants"), was charged via grand jury indictment with (1) five counts of wire fraud in violation of 18 U.S.C. § 1343,[5] and (2) four counts of engaging in unlawful monetary transactions derived from specified unlawful activities in violation of 18 U.S.C. § 1957.[6] It is alleged that between November 2022 and February 2023, Defendants "devised and intended to devise a scheme and artifice to defraud [Chad Bradford ("Bradford") and Hardell Mack ("Mack")], and to obtain money and property by

---

[1] Rec. Doc. 31.
[2] Rec. Doc. 51
[3] Rec. Doc. 57.
[4] Rec. Doc. 31.
[5] Rec. Doc. 1, pp. 2-7 (Counts one through five).
[6] *Id.* at pp. 7-8 (Counts six through nine).

1

means of materially false and fraudulent pretenses, representations, and promises."[7] More specifically, it is alleged that Brown and Lartigue falsely represented to Bradford and Mack (the "Promoters") that they were closely connected with a musical artist and could arrange for the performance of two shows at a series of concerts they were planning to stage and promote in 2023.   Relying on these representations, which were communicated electronically through WhatsApp and memorialized through several written documents—including an "Artist Performance Agreement"—it is alleged that Defendants "defrauded [Bradford and Mack] the amount of $450,000."[8]

Brown now moves to dismiss the *Indictment* on the ground that the Government has failed to name an appropriate victim for the Defendants' fraudulent scheme or artifice.[9]   Specifically, he argues that an indictment under 18 U.S.C. § 1343 cannot be supported where the Government's identified victims, Bradford and Mack, had no "traditional property interest in the funds" that were wired to Defendants, and which now form the basis of the charged conduct.[10]   Underlying his contention is the unopposed assertion that the monies Defendants received from the Promoters had, in fact, been fraudulently obtained from an unnamed individual ("Victim A") by way of a scheme for which Bradford and Mack have since pleaded guilty before this Court and the Eastern District of Louisiana, respectively.[11]   Thus, Defendant contends that stolen money cannot

---

[7] *Id.* at pp. 2-3.
[8] *Id.* at p. 6.
[9] *See* Rec. Doc. 31, pp. 3-4.
[10] *Id.* at p. 4.
[11] *Id*. at p. 3, ¶ 9.  The Government does not dispute that the money obtained from Victim A is the same money that was then transmitted to Defendants by the Promoters.  Indeed, as Defendant points out, the factual basis of Bradford's plea agreement—entered into before this Court—states: "*in an attempt to stage a concert with [unnamed artist], Mr. Bradford sent $450,000 of Victim A's money to two individuals, believing that those men could assist him in staging a concert.*"  *Id.* at pp. 4-5. (emphasis added); *see* Rec. Doc. 51, p. 3.

be stolen twice, or "simultaneously belong to Victim A and [the Promoters]"[12] for purposes of charging wire fraud, and that, unless the *Indictment* is dismissed or changed, "the Government must undoubtedly try to maintain that Victim A is the 'ultimate victim' of [his] fraud"—something the *Indictment* purportedly fails to do.[13]

The Government responds that not a single case supports Defendant's contention that stolen money cannot be stolen again. It maintains that the *Indictment* alleges every element of the crimes charged and the essential facts supporting those elements. Further because § 1343 "does not require that any specific party be defrauded, does not include the word 'victim,' and does not include any reference to the ownership … of the money or property" at issue,[14] the Government contends that Defendant's argument adds an element to the crime of wire fraud unsupported by either the plain language of the statute or any precedential case law applying it.[15]

## II.    LAW AND ANALYSIS

A defendant may move to dismiss an indictment or a count of the indictment for failure to charge an offense under Federal Rule of Criminal Procedure 12(b)(3)(B). Under Rule 7(c) an indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Under the Sixth Amendment, there are essentially the same requirements, since an indictment must "(1) enumerate each prima facie element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against

---

[12] Rec. Doc. 31, p. 7 ¶ 21.
[13] *Id.* at p. 4 ¶ 13 (stating that "the Indictment in this case identifies Mr. Mack and Mr. Bradford as victims deprived of $450,000").
[14] Rec. Doc. 51, p.5
[15] *Id.* at p. 1.

future prosecutions."[16]  There is no "ritual of words" that is required for an indictment to be deemed sufficient.[17]  As long as the statute contains the essential elements of the offense, utilizing the statute's language in the indictment is a generally accepted practice.[18]  Since the purpose of the indictment is to fairly inform the defendant of the charge(s) against him, the government is not required to prove the charges in the indictment.[19]

"In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated."[20]  In other words, the Court "must examine the relevant statutes and determine if the facts and charges alleged in the Indictment reflect a proper interpretation of criminal activity under those statues."[21]  "If a question of law is involved, then consideration of the motion is generally proper,"[22] and the Court may consider undisputed facts, in addition to the allegations in the Indictment.[23]

The Court begins its analysis, as it must, with the plain language of the statute providing for the present criminal prosecution.[24]  In relevant part, 18 U.S.C. § 1343 makes it a crime for a person "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses … [to] transmit or cause to be transmitted by means of wire … communication in interstate or foreign commerce … any writings, signs, signals, pictures, or sounds for the purpose

---

[16] *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996).
[17] *United States v. Wilson*, 884 F.2d 174, 179 (5th Cir. 1989).
[18] *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986).
[19] *United States v. Cavalier*, 17 F.3d 90, 92 (5th Cir. 1994).
[20] *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999).
[21] *United States v. Johnson*, 2015 WL 8478397, at *2 (E.D. La. Dec. 10, 2015).
[22] *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977).
[23] *United States v. Patino*, 758 F. Supp. 3d 664, 667 (W.D. Tex. 2024).
[24] *United States v. Ratcliff*, 488 F.3d 639, 643 (5th Cir. 2007).

of executing such scheme or [artifice]."[25]  The Government therefore contends that all the *Indictment* is required to set forth are facts sufficient to describe: (1) the defendants' scheme; (2) the defendants' material false statements; (3) the interstate wires transmitted; and (4) the defendants' specific intent to defraud.[26]

The Court agrees—§ 1343 does not require the Government to identify a victim or prove, beyond a reasonable doubt, that the money a defendant intended to defraud was, in fact, a traditional property interest of the person at whom the scheme was targeted.  It is sufficient to show that the object of the Defendant's fraudulent scheme would be a traditional property interest in the hands of a person, generally.[27]  To that end, "money is money;" it is a traditional property interest for purposes of § 1343, regardless of whether the target of the fraudulent plan lawfully possesses it.[28]  Such is the logical import of Supreme Court's direction in *Kousisis v. United States*, that "federal fraud statutes reach only traditional property interests."[29]  To conclude otherwise would be to find that the second clause of § 1343—"or for obtaining money or property by means of false or fraudulent … promises"—simply modifies the first clause—"any scheme or artifice to

---

[25] 18 U.S.C. § 1343 (cleaned up).

[26] Rec. Doc. 51, p. 6.

[27] *See Ciminelli v. United States*, 598 U.S. 306, 309 (2023) (stating the federal fraud statutes "criminalize only schemes to deprive people of traditional property interests.").  While Defendant cites *Ciminelli* for the proposition that "[a]n indictment that charges [someone] with defrauding two people who had no traditional property interest in the funds at issue does not state a cognizable wire fraud offense," Rec. Doc, 31, p. 6, a review of the case commands no such result.  The Court's holding there merely recognized that "[t]he right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest." *Ciminelli*, 598 U.S. at 316.  Here, because the object of the alleged fraud scheme was money, the principles of *Ciminelli* are satisfied.

[28] *United States v. Granberry*, 908 F.2d 278, 280 (8th Cir. 1990); *United States v. Bradley*, 2025 WL 3564151, at *6 (D. Conn. Dec. 12, 2025) ("These traditional property interests include money and property.").

[29] 605 U.S. 114, 121-22 (2025).  Importantly, neither the *Kousisis* Court, nor the plain language of § 1343, suggest that a fraudulent scheme is only proscribed under the wire fraud statute if it targets a traditional property interest in the hands of its rightful owner.  Like *Ciminelli*, the holding of *Kousisis* is simply an added chapter to the Supreme Court's growing body of decisions that reiterate the federal fraud statutes reach only traditional property interests (i.e., money or property)—and not, as was the case there, "schemes that target the exercise of the Government's regulatory power." *Id.* at 122.

defraud"—such that any violation of the wire fraud statute must involve a scheme for obtaining the victim's own property.  Not so.[30]

While Defendant cites to *Cleveland v. United States*[31] for precisely that proposition, the Fifth Circuit summarily rejected the argument in *United States v. Baker*,[32] where it clarified, in the context of § 1341 (the mail fraud statute), that *Cleveland* does not require every violation thereof to "involve a scheme for obtaining the <u>victim's</u> property."[33]  The same conclusion must hold true for this Court's interpretation of the verbatim language found in § 1343.[34]  To that end, the Fifth Circuit had already explained, in *United States v. McMillan*, that all the Government must prove under the wire fraud statute is "a scheme to defraud, the use of … wire communications [therefor], and a specific intent to defraud."[35]  In line with this principle, the *Baker* court expressly rejected the argument that § 1343 requires "the government to prove that [a defendant] intended to obtain property from a victim," rather than allow for conviction "based on a scheme that was … intended to bring about a financial gain" by a fraudulent means.[36]

More specifically, the *Baker* court concluded that jury instructions were not erroneous where they allowed for conviction, under 18 U.S.C. § 1343, if it was shown the

---

[30] *United States v. Jonas*, 824 F. Appx. 224, 231 (5th Cir. 2020) ("The deception does not need to be targeted at the victim, so a scheme to defraud may involve deceiving one person to deprive someone else of money or property.").

[31] 531 U.S. 12, 19 (2000).

[32] 923 F.3d 390 (5th Cir. 2019).

[33] *Id.* at 405 (quoting *United States v. Hedaithy*, 392 F.3d 580, 602 (3rd Cir. 2004) (emphasis added)).

[34] Not to mention, the statute's first and second clauses are separated by an "or."  The word "or" as used in the statute is a disjunctive conjunctive, indicating that the sentences are to be looked at separately, i.e., expressing an alternative between the groups of words it joins.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979).  Thus, even if the second clause of § 1343 did require that the target of a fraudulent scheme lawfully possess the property defrauded—which the Court does not decide—the first clause of the statute would nevertheless support conviction for the devising of a scheme to defraud alone.

[35] 600 F.3d 434, 450 (5th Cir. 2010).

[36] *Baker v. United States*, 2022 WL 21805928, at *1 (W.D. Tex. May 17, 2022) (describing holding in *United States v. Baker*, 923 F.3d 390, 403-04 (5th Cir. 2019)).

defendant "intended to deceive victims out of their money for his own financial benefit."[37] The court subsequently found the following evidence sufficient to do just that: (1) the defendant made false statements to investors; (2) the defendant knew the statements were false; and (3) the scheme was intended to benefit the defendant.[38]  Here, that is precisely the kind of information the *Indictment* sets forth: *that, over a period of time, Defendants knowingly made several false statements to Bradford and Mack with the intention of receiving a financial benefit therefrom*.  To the extent that an indictment need only sufficiently allege a federal crime to survive a motion to dismiss, the *Indictment* in this case easily meets that standard.

Moreover, it is not insignificant that neither the plain language of § 1343 nor the *Indictment* include the word "victim."  While Defendant maintains that the Indictment "identifies Mr. Mack and Mr. Bradford as victims deprived of $450,000[,]" the Court finds they are just as aptly described as targets of the Defendant's scheme, such that liability would arise under § 1343 even if they did not lose money in which they have a legally cognizable interest.  Indeed, the Government is "not required to prove that any victim [or target] actually suffered a loss."[39]  Again, it is the devising a scheme to defraud, and not its ultimate success, that concerns the first clause of § 1343.  Thus, that the *Indictment* describes Mack and Bradford not as victims but as "individuals to whom the defendants made their false representations" and Bradford "as the person who deposited the money

---

[37] 923 F.3d at 405.

[38] *Id.* Noticeably absent is any evidence that the targeted investors either lost money because of the scheme or, more importantly, had a legally cognizable interest in the money that the defendant sought to defraud in the first instance.

[39] *McMillan*, 600 F.3d at 450; *see Red Fort Capital, Inc. v. Guardhouse Productions LLC*, 397 F. Supp. 3d 456, 468 (S.D.N.Y. 2019) (citing *United States v. Pierce*, 224 F.3d 158, 166 (2d Cir. 2000) ("[T]o establish a scheme to defraud for purposes of the wire fraud statute," it does not need to be shown "that the scheme in fact resulted or would have resulted in a loss to the person who is the target of the plan.").

into [Lartigue's] bank account" is of no significance.[40]   Surely, it does not then require the Government to prove that Victim A was the "ultimate victim" of the Defendant's scheme. To do so would be to improperly reward Defendant, whose fraudulent scheme appears, by happenstance, to have selected a target who, under Defendant's theory, is incapable of being defrauded.  In any event, it is clear to the Court that it is the devising a scheme to target any person, regardless of whether their financial situation is ripe for defrauding (or if the money to be defrauded is properly in their possession), that gives rise to criminal liability under § 1343.[41]   Therefore, regardless of the Promoters' characterization as victims, "non-victim intermediaries[,]" or mere targets of a scheme, the elements of wire fraud as set forth by the *McMillan* court—and the Fifth Circuit's Criminal Pattern Jury Instructions—are sufficiently alleged in the *Indictment* such that it conforms with "minimal constitutional standards."[42]

Having found the *Indictment* sufficiently alleges the five counts of wire fraud, the Court need not consider whether the *Indictment* fails to allege Defendant engaged in unlawful monetary transactions.  Indeed, the parties do not dispute that Defendant's challenge to these counts rise or fall with the alleged wire fraud counts on which they are predicated.[43]   Considering the alleged wire fraud is properly set forth by the *Indictment*, and in the absence of any additional arguments by Defendant to the contrary, the Court finds the Government's allegations in Counts 6 through 9 (unlawful monetary

---

[40] Rec. Doc. 51, p. 6; *see McMillan*, 600 F.3d at 446 (finding a new indictment that specifically listed the sources of the defrauded monies (i.e., the victims) "did not change the facts as to the defendants' underlying conduct that constituted the alleged violations of the statutes.").

[41] *See generally Phoenix Bond & Indemnity Co v. Bridge*, 477 F.3d 928, 932 (7th Cir. 2007) (stating in the context of the mail fraud statute that "[i]t is illegal to obtain money by a scheme that entails fraud….").

[42] *United States v. Bieganowski*, 313 F.3d 264, 285 (5th Cir. 2002).

[43] Rec. Doc. 31, p. 8 ¶ 22;  Rec. Doc. 51, p. 2 ("the specified unlawful activity alleged in Counts 6 through 9 is the wire fraud alleged in connection with counts 1 through 5");  Rec. Doc. 57, p. 7.

transactions) are likewise constitutionally sound.

**III.    CONCLUSION**

For the foregoing reasons, Defendant Sherman Myron Brown's *Motion to Dismiss*[44] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this _8th_ day of _____June_____, 2026.


_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[44] Rec. Doc. 31.